*637 OPINION.
TURNER:
It is the position of the petitioners that the payment of $50,000 by Van Vleet to Ellis, the surrender by Ellis of 7,880.91 shares of Van Vleet-Ellis Corporation stock, the receipt by him of $253,166.75, the transfer by Van Vleet-Ellis Corporation of its real estate to the Chemical Realty Co. and the distribution of stock of the latter corporation, and finally the transfer of the remaining assets to McKesson & Bobbins, Inc., for stock and cash and the distribution in liquidation to the stockholders of the Van Vleet-Ellis Corporation were steps in a reorganization or merger of the Van Vleet-Ellis Corporation with McKesson & Robbins, Inc., consummated on January 31, 1930, and that there was no closed nor completed transaction during the year 1929 from which Ellis realized *638 taxable gain. On the other hand, it is the contention of the respondent that the payment of the $50,000 to Ellis by Van Vleet, the disposition of 7,880.91 shares of Van Vleet-Ellis Corporation stock by Ellis, and the organization of the Chemical Realty Co. and its acquisition of real estate from the Van Vleet-Ellis Corporation were completed transactions in 1929, distinct and separate from the transaction whereby McKesson & Robbins, Inc., acquired all other assets of the Van Vleet-Ellis Corporation and that Ellis realized taxable gain therefrom in 1929. In the alternative, it is the contention of the respondent that if the transfers referred to were but steps in a single transaction, the transaction was completed on September 16, 1929, and any gain derived therefrom by Ellis was realized and is taxable to him in 1929.
In First Seattle Dexter Horton National Bank v. Commissioner, 77 Fed. (2d) 45, the general rule was stated from 13 C. J. 561, § 525, to the effect that “a contract is entire when by its terms, nature and purpose it contemplates and intends that each and all of its parts and the consideration shall be common to the other and interdependent.” Considering the agreement and the supporting facts in the instant case in the light of the language just quoted, there is no doubt in our minds that the disposition by Ellis of his 15,905 shares of stock in Van Vleet-Ellis Corporation was one transaction rather than two. From the time the option was given on May 6,1929, there was never any thought in the minds of the parties but that if the plan went through it should go through in toto and each and every stockholder of the Van Vleet-Ellis Corporation would surrender his entire holdings therein for cash, stock in the realty company, and stock in McKesson <& Robbins, Inc. There was no thought or intention on the part of Ellis, Van Vleet, the Van Vleet-Ellis Corporation, or McKesson & Robbins, Inc., that Ellis or any other stockholder would dispose of or surrender any portion of their holdings except as a step in the disposition of their entire holdings and the complete liquidation of Van Vleet-Ellis Corporation.
The conditions of management and ownership of the Van Vleet-Ellis Corporation were such that it would not be reasonable to assume that a transaction would have been entered into by either Ellis or Van Vleet that did not provide for the disposition of the entire holdings of one or both. There was never any thought or agreement for partial liquidation. Cf. Commissioner v. Blum, 75 Fed. (2d) 699, affirming 29 B. T. A. 580. It is true one step in-the transaction took the form of a surrender by Ellis of 7,880.91 shares of his stock prior to the final transfer of assets to McKesson. The evidence indicates, however, that the negotiations were originally based on an understanding that McKesson- was to acquire %he drug business and assets, except real estate, of Van Vleet-Ellis *639 Corporation and that the stockholders of the Van Vleet-Ellis Corporation were to receive cash and McKesson stock at a rate equal to the book value of their stock in the Van Vleet-Ellis Corporation. The evidence also shows that, by reason of the failure on the part of McKesson to assume the employment contract of Ellis with the Van Vleet-Ellis Corporation and as an inducement to him, it had been agreed that he was to receive a substantial part of the consideration for his stock in cash. It is obvious that the 7,880.91 shares set off against the $250,000 in cash was arrived at, not because of an independent and original agreement between Ellis and the Van Vleet-Ellis Corporation for the surrender and redemption of that particular number of shares or only a part of his shares, but because that number of shares at the rate agreed upon for the surrender of all the Van Vleet-Ellis Corporation stock in the transaction as a whole equaled $250,000, which amount it had been agreed Ellis was to receive in cash.
Considering all the facts and circumstances, we think there is no doubt that Ellis disposed of his 15,905 shares of Van Vleet-Ellis Corporation stock as a unit and the gain or loss to him must be computed on the basis of one transaction. First Seattle Dexter Horton National Bank v. Commissioner, supra; West Texas Refining & Development Co. v. Commissioner, 68 Fed. (2d) 77; Omaha Coca-Cola Bottling Co., 26 B. T. A. 1128; Fred L. Dickey et al., Executors, 32 B. T. A. 1283; cf. Bruce v. Helvering, 76 Fed. (2d) 442.
We are further of the opinion that the alternative contention of the respondent is not sustained by the facts. The plan outlined in the agreement fixed the time for its final consummation as not earlier than January 15 nor later than January 31, 1930. It also appears from the agreement that liability on the part of McKesson was subject to certain conditions precedent and that these conditions were met in January 1930 and at the time of closing, when McKesson paid to the depositary the stock and cash required of it under the contract.
The facts do show, however, that Ellis did receive a substantial portion of the consideration for his stock during the year 1929. It is also apparent that the consideration paid over in 1929 was received by Ellis as his own, with full confidence that all conditions would be met and the transaction would be completed as provided in the agreement. He is accordingly taxable in 1929 if and to the extent that the consideration received in 1929 exceeded $576,116.33, the basis for his stock. The facts show that he received in that year $253,166.75 in cash and 15,905 shares of stock in the Chemical Kealty Co. It is the Commissioner’s contention that the Chemical Kealty Co. stock had a fair market value of $19.33 per share. Even though *640 this value be conceded, it is apparent that the cash, plus the stock at that value, did not equal the cost to Ellis of his stock in the Yan Vleet-Ellis Corporation, and Ellis realized no taxable gain in 1929 from the disposition of the stock.
Having determined that Ellis realized no gain in 1929 in connection with the surrender of his stock in the Van Vleet-Ellis Corporation and the liquidation of that company, it is not necessary to consider and determine whether or not the acquisition by McKesson of the business and a portion of the assets of the Van Vleet-Ellis Corporation, consummated in 1930, constituted a reorganization within the meaning of the statute, since the reorganization provisions have to do only with the recognition and not the realization of gain. We do not have the year 1930 before us.
With reference to the item of $49,241.67 realized by Ellis on the note paid to him by Van Vleet under date of September 21, 1929, the respondent is sustained. This payment was made by Van Vleet individually for himself and other members of his family who were stockholders of the Van Vleet-Ellis Corporation. It was no part of the agreement between the Van Vleet-Ellis Corporation and McKesson & Robbins, Inc. It represented the price that Van Vleet and other stockholders were willing to pay to Ellis in order to obtain a favorable vote from him with reference to the McKesson transaction, and, while it is true that the agreement was occasioned by the option granted to McKesson by the Van Vleet-Ellis Corporation, neither of these corporations was a party to the agreement, nor obligated by it. It was a- side transaction between two of the stockholders of the Van Vleet-Ellis Corporation. While it is true that the language of the agreement of May 16, 1929, supports the contention that the money was not to be paid until the closing by the two corporations, the intent of the language was the subject matter of a dispute between the parties at the time Ellis received-the sum of $253,166.75 and submitted his resignation as chairman of the board of directors. It was his contention that the money was then due and owing, and after some discussion between the parties and their counsel the note for $50,000, payable on January 31, 1930, was executed by Van Vleet and delivered to Ellis and a new agreement setting forth the purposes for the payment was attached to the note. The note was an ordinary note payable on a given date in the future and the language of the new agreement indicates that the note was then and there given in satisfaction of the obligation of Van Vleet and for the performance of acts done and to be done by Ellis. It was income to Ellis when received. Alworth-Washburn Co. v. Helvering, 67 Fed. (2d) 694.
Reviewed by the Board.

Decision will be entered under Rule 50.